UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -   x

SECURITIES INVESTOR PROTECTION CORPORATION,

                            Plaintiff-Applicant,

            v.

BERNARD L. MADOFF INVESTMENT SECURITIES LLC,

                            Defendant.

: Case No Adv. Pro. No. 08-01789(BRL)
:
: SIPA Liquidation
:
: (Substantively Consolidated)
:
:
:
:
:

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -   x

In re:

BERNARD L. MADOFF,

                            Debtor.

IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,

                            Plaintiff,

            v.

:
:
:
:
:
:
: Adv. Pro. No. 10-05356 (BRL)
:
:
:
:

BEACON ASSOCIATES LLC I, BEACON ASSOCIATES LLC II, BEACON ASSOCIATES LLC, BEACON ASSOCIATES MANAGEMENT CORPORATION, ANDOVER ASSOCIATES, L.P., ANDOVER ASSOCIATES LLC I, ANDOVER ASSOCIATES (QP) LLC, ANDOVER ASSOCIATES LLC II, ANDOVER ASSOCIATES MANAGEMENT CORPORATION, JOEL DANZIGER, HARRIS MARKHOFF, J.P. JEANNERET ASSOCIATES, INC., JOHN JEANNERET, PAUL PERRY, IVY ASSET MANAGEMENT LLC, LAWRENCE SIMON, HOWARD WOHL, IVY BIRCHWOOD ASSOCIATES, L.P., IVY ENHANCED INCOME FUND, IVY OAKWOOD ASSOCIATES, L.P., IVY REGENCY FUND, L.P., IVY ROSEWOOD ASSOCIATES, L.P., IVY ROSEWOOD OFFSHORE FUND, LTD., BIRCHWOOD ASSOCIATES MANAGEMENT LLC, OAKWOOD ASSOCIATES MANAGEMENT LLC, ROSEWOOD ASSOCIATES MANAGEMENT LLC, IVY INTERNATIONAL LLC and REGENCY ASSET MANAGEMENT LLC,

                            Defendants.

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -   x

# MEMORANDUM OF LAW IN SUPPORT OF
## MOTION TO WITHDRAW THE BANKRUPTCY REFERENCE

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ....................................................................................................1

BACKGROUND ........................................................................................................................3

I.    WITHDRAWAL OF THE BANKRUPTCY REFERENCE
IS MANDATORY BECAUSE RESOLUTION OF THE
ADVERSARY PROCEEDING REQUIRES SIGNIFICANT
INTERPRETATION OF FEDERAL NON-BANKRUPTCY LAW .................................5

     A. Determining Whether Withdrawals From BLMIS Accounts Were
"Settlement Payment[s]" Or "In Connection With A Securities
Contract," And Thus Fall Within The Section 546(e) Safe Harbor
Requires Significant Interpretation of Federal Non-Bankruptcy Law.........................6

     B. The Trustee's Claims Require That He Show That Defendants
Were "Willfully Blind" To Madoff's Fraud In Order To Establish That
They Acted Without "Good Faith," Requiring Significant Interpretation
And Application Of A Standard Derived From Federal Securities Law.....................9

     C. Determining Whether the Customer Claims May Be Disallowed
Under Section 502(d) In the Context of a SIPA Case Requires
Significant Interpretation of Federal Non-Bankruptcy Law.......................................12

     D. Determining Whether the Customer Claims
May Be Equitably Subordinated in a SIPA Case Requires
Significant Interpretation of Federal Non-Bankruptcy Law.......................................13

II. EVEN WERE WITHDRAWAL NOT MANDATORY, IT WOULD
BE WARRANTED HERE IN THE EXERCISE OF DISCRETION
TO FACILITATE THE EFFICIENT RESOLUTION OF THIS CASE ..........................14

     A. Most Of The Defendants Are Entitled To Jury Trials On The
Trustee's Claims, Which Cannot Be Conducted In Bankruptcy Court .....................15

     B. The Bankruptcy Court Lacks Constitutional Authority To Enter
A Final Judgment Against Defendants Who Have Not Filed SIPA Claims...............16

     C. Withdrawing The Bankruptcy Reference Now
Would Facilitate Coordination Of This Litigation With
Highly-Related Claims Already Pending In The District Court..................................17

CONCLUSION..........................................................................................................................20

# TABLE OF AUTHORITIES

**Page**

## Federal Cases

Bear, Stearns Sec. Corp. v. Gredd,
2001 WL 840187 (S.D.N.Y. July 25, 2001) ........................................................................6, 12

Chemtura Corp. v. United States,
2010 WL 1379752 (S.D.N.Y. Mar. 26, 2010) .........................................................................12

Enron Creditors Recovery Corp. v. Alfa S.A.B. de C.V.,
651 F.3d 329 (2d Cir. 2011).....................................................................................................7

Granfinanciera, S.A. v. Nordberg,
492 U.S. 33 (1989)...........................................................................................................15, 17

In re 131 Liquidating Corp.,
222 B.R. 209 (S.D.N.Y. 1998)................................................................................................16

In re Adelphia Institute, Inc.,
112 B.R. 534 (S.D.N.Y. 1990)................................................................................................17

In re Cablevision S.A.,
315 B.R. 818 (S.D.N.Y. 2004)..................................................................................................6

In re Churchill Mortg. Inv. Corp.,
256 B.R. 664 (Bankr. S.D.N.Y. 2002) ....................................................................................11

In re CIS Corp.,
172 B.R. 748 (S.D.N.Y. 1994)..........................................................................................16, 17

In re Enron Corp.,
388 B.R. 131 (S.D.N.Y. 2008)..............................................................................................6, 7

In re Enron Corp.,
No. 04 Civ. 509 (MBM), 2004 WL 2149124 (S.D.N.Y. Sept. 23, 2004)...............................15

In re Enron Power Marketing, Inc.,
2003 WL 68036 (S.D.N.Y. 2003)...........................................................................................14

In re First Alliance Mortgage Co.,
298 B.R. 652 (C.D. Cal. 2003) ...............................................................................................14

In re Foxmeyer Corp.,
286 B.R. 546 (Bankr. D. Del. 2002) .......................................................................................11

In re Hooker Investments, Inc.,
  937 F.2d 833 (2d Cir. 1991)..............................................................................15

In re Quebecor World (USA) Inc.,
  453 B.R. 201 (S.D.N.Y. 2011)............................................................................7

In re The VWE Group,
  359 B.R. 441 (S.D.N.Y. 2007)..........................................................................14

Langenkamp v. Culp,
  498 U.S. 42 (1990)............................................................................................15

McCord v. Papantoniou,
  316 B.R. 113 (E.D.N.Y. 2004) .........................................................................16

Murray's Lessee v. Hoboken Land & Improvement Co.,
  18 How. 272 (1856) ..........................................................................................16

Northern Pipeline Const. Co. v. Marathon Pipe Line Co.,
  458 U.S. 50 (1982)............................................................................................17

Orion Pictures Corp. v. Showtime Networks,
  4 F.3d 1095 (2d Cir. 1993)..........................................................................14, 19

Picard v. Flinn Investments, LLC,
  2011 WL 5921544 (S.D.N.Y. Nov. 28, 2011) ........................................... passim

Picard v. HSBC Bank PLC,
  450 B.R. 406 (S.D.N.Y. 2011)........................................................................5, 6

Picard v. Katz,
  2011 WL 4448638 (S.D.N.Y. Sept. 27, 2011) .......................................... passim

Picard v. Katz,
  No. 11 Civ. 3605 (JSR) (S.D.N.Y. July 1, 2011)...............................................10

Picard v. Merkin (In re Bernard L. Madoff Inv. Sec. LLC),
  440 B.R. 243 (Bankr. S.D.N.Y. 2010)..............................................................8, 9

Schoenthal v. Irving Trust Co.,
  287 U.S. 92 (1932)............................................................................................17

SIPC v. Bernard L. Madoff Inv. Secs. LLC,
  454 B.R. 307 (S.D.N.Y. 2011).................................................................2, 6, 12

Stern v. Marshall,
  131 S. Ct. 2594 (2011)......................................................................................16

HF 7296176v.1 #14035/0004

## State Cases

Picard v. Avellino,
   Slip Op. .........................................................................................................................9

Picard v. Greiff,
   No. 11 Civ. 3775 (JSR) ..................................................................................................8

Picard v. Maxam Absolute Return Fund, L.P.,
   No. 11 Civ. 7428 (JSR) ..................................................................................................8

## Statutes

11 U.S.C. § 548(c) ..........................................................................................9, 10, 11, 12

15 U.S.C. § 78fff-2(b) ...............................................................................................12

15 U.S.C. § 78fff(b) ...................................................................................................12

28 U.S.C. § 157(d) ............................................................................................. passim

28 U.S.C. § 157(e) ....................................................................................................16

§ 502(d) of the Bankruptcy Code.............................................................2, 5, 12, 13

§ 510(c) of the Bankruptcy Code...................................................................5, 13

§ 544(b) of the Bankruptcy Code.....................................................................7, 11

§ 546(e) of the Bankruptcy Code............................................................... passim

§ 548(a)(1) of the Bankruptcy Code ...............................................................10

§§ 548(a)(1) and 544(b) of the Bankruptcy Code...........................................9

§ 550 of the Bankruptcy Code ...........................................................................4

New York Debtor and Creditor Law ("NY DCL"), Title 11 ..............................1, 5, 6, 14

sections of the Bankruptcy Code .......................................................................12

Securities Investor Protection Act, 15 U.S.C. §§ 78aaa, *et seq.* ("SIPA") ................................2, 16

HF 7296176v.1 #14035/0004

Defendants Beacon Associates LLC I, Beacon Associates LLC II, Beacon Associates LLC, Beacon Associates Management Corporation, Andover Associates, L.P., Andover Associates LLC I, Andover Associates (QP) LLC, Andover Associates LLC II, Andover Associates Management Corporation, Joel Danzinger, Harris Markhoff, J.P. Jeanneret Associates, Inc., John Jeanneret, Paul Perry, Ivy Asset Management LLC, Lawrence Simon, Howard Wohl, Ivy Birchwood Associates, L.P., Ivy Enhanced Income Fund, Ivy Regency Fund, L.P., Ivy Rosewood Associates, L.P., Ivy Rosewood Offshore Fund, Ltd., Birchwood Associates Management LLC, Rosewood Associates Management LLC, Ivy International LLC and Regency Asset Management LLC[1] (collectively, the "Defendants") respectfully submit this memorandum of law in support of their motion (the "Withdrawal Motion"), pursuant to 28 U.S.C. § 157(d), to withdraw from the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") the reference of the above-captioned adversary proceeding (the "Adversary Proceeding") commenced by Irving H. Picard, as trustee (the "Trustee") for the liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS").

## PRELIMINARY STATEMENT

In this case, the Trustee seeks to avoid more than $114 million in the aggregate from Defendants (the "Transfers"), representing funds allegedly transferred from BLMIS to one or more of the Defendants, either as initial or subsequent transferees. Of the $114 million of Transfers that the Trustee challenges, $106 million (approximately 93%) occurred more than two years prior to December 11, 2008 (the "Filing Date"); indeed, the majority of the Transfers at issue in this case occurred many years earlier – as far back as 1990. The Trustee's claims arise under New York Debtor and Creditor Law ("NY DCL"), title 11 of the United States Code (the

---

[1]     Additional defendants Oakwood Associates LP and Oakwood Associates Management LLC are dissolved entities that have not appeared in the Adversary Proceeding.

"Bankruptcy Code") and the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa, *et seq.* ("SIPA").  The Trustee also seeks to disallow and equitably subordinate the customer claims filed by each of Andover Associates, L.P. ("Andover") and Beacon Associates LLC I ("Beacon"), the only two Defendants that filed customer claims, in the aggregate amount of approximately $140 million (the "Customer Claims").

Although the Trustee brought the action in the Bankruptcy Court, it cannot remain there.  As the Court has recognized in several related actions, the Trustee's claims in a SIPA proceeding such as this against a broker-dealer's customers and their affiliates implicates and requires the interpretation of non-title 11 federal law – including SIPA itself – and accordingly those claims must be withdrawn to the District Court.  Among the non-bankruptcy questions raised by the Trustee's claims here are:

- Whether the federal securities laws, including SIPA, consider BLMIS's returns of principal and/or profits to investors to be "transfer[s] made by . . . [a] stockbroker" either as "settlement payment[s]" or as payments "in connection with a securities contract . . . ."  If so, section 546(e) bars the Trustee's avoidance claims except those made under section 548(a)(1)(A) with respect to certain transfers made within two years prior to the Filing Date.

- Whether the Trustee can establish (both at the pleadings stage and, if necessary, on the merits) that the Defendants were sufficiently "willfully blind" to Bernard L. Madoff's ("Madoff") fraud to justify the Trustee's avoidance and recovery of transfers representing the Defendants' withdrawals of their principal investments.

- Whether the Bankruptcy Court can constitutionally enter a final judgment on claims in a proceeding under SIPA for avoidance of alleged fraudulent conveyances against third parties who have not submitted SIPA customer claims or otherwise participated in the claims allowance process in bankruptcy.

- Whether SIPA overrides section 502(d) of the Bankruptcy Code, precluding the Trustee from disallowing the Customer Claims and permitting Andover and Beacon to pursue their Customer Claims even if they received avoidable transfers.

HF 7296176v.1 #14035/0004

Each of these issues requires significant interpretation of, among other things, SIPA – a federal non-bankruptcy law – and they thus fall into the category of questions that Congress has directed must be answered by an Article III Court.  28 U.S.C. § 157(d). Withdrawal of the bankruptcy reference is accordingly mandatory, as Judge Rakoff recognized in *Picard v. Katz*, 2011 WL 4448638 (S.D.N.Y. Sept. 27, 2011) (hereinafter <u>*Katz*</u>), *Picard v. Flinn Investments, LLC,* 2011 WL 5921544 (S.D.N.Y. Nov. 28, 2011) (hereinafter, "*Flinn*"), *Picard v. Avellino*; Case No. 11-civ-3882 (S.D.N.Y. Mar. 6, 2012) (hereinafter "*Avellino*") and several other decisions.  The Defendants are guided by the rationale in Judge Rakoff's decisions, which are directly on point, and the Defendants are not aware of any other decisions that have concluded to the contrary on these same facts involving the same Trustee, in the same SIPA liquidation, and pursuing the same legal theories of recovery.

## <u>BACKGROUND</u>

Until December 10, 2008, Madoff was considered one of the most prominent and successful figures in the securities industry.  He was the former chairman of NASDAQ, regularly testified before the SEC on industry-related matters, appeared on industry panels, and was a member of a joint venture with other elite Wall Street firms to establish the first electronic trading platform.  But on December 11, 2008, following his confession, Madoff was arrested for violations of criminal securities laws for operating BLMIS as the largest Ponzi scheme in history.  On December 12, 2008, the Honorable Louis L. Stanton of the United States District Court for the Southern District of New York (the "<u>District Court</u>") entered an order appointing a receiver for the assets of BLMIS.  On December 15, 2008, Judge Stanton entered an order which, among other things, removed this SIPA case to the United States Bankruptcy Court for the Southern District of New York, and the Trustee was appointed to oversee the liquidation of BLMIS.

HF 7296176v.1 #14035/0004

The Defendants in this case fall broadly into two categories.  Prior to the Filing Date, certain of the Defendants (the "Customer Defendants") were customers of BLMIS's investment advisory business, and made investments through several customer accounts maintained at BLMIS (the "BLMIS Accounts").  Among them, Defendants Andover and Beacon invested more money with BLMIS than they ever redeemed; in the parlance of SIPA, each was a "net loser."  The remaining BLMIS Customer Defendants – Birchwood Associates, Enhanced Income Fund, Oakwood Associates, Rosewood Offshore, and the Regency Fund (the "Ivy Proprietary Funds") – had long since stopped investing with Madoff, having fully withdrawn their funds at Madoff's insistence in or before 2000.

The remaining Defendants (the "Management Defendants") are the current or former managers or general partners of the Customer Defendants, their affiliates, the managers' sub-advisors, and the investment advisors of a group of other BLMIS customers who are not parties to this action.  None of the Management Defendants held customer accounts with BLMIS.  Rather, they are alleged to have provided services directly or indirectly to the Customer Defendants and received fees in exchange for those services, which fees the Trustee alleges constitute "subsequent transfers" that are recoverable under section 550 of the Bankruptcy Code.

Of all of the Defendants, only Beacon and Andover filed SIPA claims; on April 3, 2009, their claims were filed in an aggregate amount of approximately $140 million – representing the money that Madoff stole from those Funds.  The Trustee did not at the time issue, and still has not issued, a determination with respect to the Customer Claims.

On December 8, 2010, the Trustee filed a complaint (as amended, the "Complaint") against the Defendants, seeking to avoid the Transfers allegedly made directly or

4

indirectly from the BLMIS Accounts to the Defendants, and to disallow and equitably subordinate the Customer Claims.  The Complaint asserts the following specific causes of action:

- <u>Count One</u> – Avoidance of actual fraudulent transfers under NY DCL and the Bankruptcy Code against certain of the Beacon/Andover Fund Defendants;

- <u>Counts Two, Three, and Four</u> – Avoidance of constructive fraudulent transfers under NY DCL and the Bankruptcy Code against certain of the Beacon/Andover Fund Defendants and Management Defendants;

- <u>Counts Five through Twelve</u> – Recovery of the Transfers as either actual fraudulent transfers or constructive fraudulent transfers under NY CPLR, NY DCL and/or the Bankruptcy Code, as against all Defendants as either direct transferees or subsequent transferees;

- <u>Count Thirteen</u> – Damages for general partner liability against certain of the Defendants with respect to transfers avoided against certain of the Defendants;

- <u>Count Fourteen</u> – Disallowance of Beacon's and Andover's Customer Claims under section 502(d) under the Bankruptcy Code; and

- <u>Count Fifteen</u> – Equitable subordination of Beacon's and Andover's Customer Claims under section 510(c) of the Bankruptcy Code.

For the reasons stated herein, the Defendants respectfully move that the Court withdraw the bankruptcy reference with respect to each of these claims.

## I.   WITHDRAWAL OF THE BANKRUPTCY REFERENCE IS MANDATORY BECAUSE RESOLUTION OF THE ADVERSARY PROCEEDING REQUIRES SIGNIFICANT INTERPRETATION OF FEDERAL NON-BANKRUPTCY LAW

As recognized in other adversary proceedings in this liquidation, withdrawal of the bankruptcy reference is mandatory "if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce."  28 U.S.C. § 157(d).  Courts have interpreted section 157(d) to require withdrawal of the reference in any proceeding that involves "significant interpretation, as opposed to simple application, of federal laws apart from the bankruptcy statutes."  *Picard v. HSBC Bank PLC*, 450 B.R. 406, 409 (S.D.N.Y. 2011) (citing

*City of New York v. Exxon Corp.*, 932 F.2d 984, 995 (2d Cir. 1990)).   Where significant interpretation of the securities laws is required, courts routinely follow the statutory mandate and withdraw the bankruptcy reference.  *See, e.g., Katz; Flinn; Avellino*; *Bear, Stearns Sec. Corp. v. Gredd*, 2001 WL 840187, at *4 (S.D.N.Y. July 25, 2001); *In re Cablevision S.A.*, 315 B.R. 818, 821 (S.D.N.Y. 2004); *In re Enron Corp.*, 388 B.R. 131, 140 (S.D.N.Y. 2008).

As at least two Courts in this District have recognized, withdrawal is particularly appropriate with respect to fundamental questions of law arising in the context of a liquidation under SIPA, as opposed to an ordinary Chapter 7 bankruptcy.   "[W]hile a SIPA liquidation proceeding may be maintained in bankruptcy court, and SIPA incorporates provisions of the Bankruptcy Code, SIPA *expressly provides that it is part of the securities laws and is codified in Title 15, not Title 11*."  *SIPC v. Bernard L. Madoff Inv. Secs. LLC*, 454 B.R. 307, 316 (S.D.N.Y. 2011) (McMahon, J.) (emphasis added).   Accordingly, a "substantial issue under SIPA is therefore almost by definition, an issue 'the resolution of [which] requires consideration of both title 11 and other laws of the United States.'"   *HSBC* at 410 (quoting 28 U.S.C. § 157(d)) (alteration in original).

> **A.    Determining Whether Withdrawals From BLMIS Accounts Were "Settlement Payment[s]" Or "In Connection With A Securities Contract," And Thus Fall Within The Section 546(e) Safe Harbor Requires Significant Interpretation of Federal Non-Bankruptcy Law**

Withdrawal is mandatory here because the Trustee's claims against each of the Defendants requires that the Court apply federal securities (including SIPA) law in order to construe the "safe harbor" provisions of section 546(e) of the Bankruptcy Code.  Under section 546(e), the Trustee is precluded from recovering transfers by a stockbroker (such as BLMIS) that were *either* "settlement payment[s]" *or* were made "in connection with" a "securities contract"

on any basis other than section 548(a)(1)(A) (which applies only to transfers within the two years preceding the Filing Date).

In *Enron Creditors Recovery Corp. v. Alfa S.A.B. de C.V.*, 651 F.3d 329, 334 (2d Cir. 2011), the Second Circuit recently observed that section 546(e) "stands at the intersection of two important national legislative policies on a collision course – the policies of bankruptcy and securities law."  In *Enron*, the Second Circuit directed that the application of the section 546(e) safe harbor be governed by the "plain language" of the provision.  *Id.* at 335; *see also In re Quebecor World (USA) Inc.*, 453 B.R. 201, 215 (S.D.N.Y. 2011) ("The cumulative effect of this consistent circuit authority is to remove from consideration any mandated set of procedures or participants and to focus instead on applying the literal language of the statutory exemption to the facts presented.").  The plain language of section 546(e) provides that, where implicated, the the Trustee may not avoid any Transfer based on sections 544 (state law), 547 (preference), or 548(a)(1)(B) (constructive fraudulent transfer) of the Bankruptcy Code.

In *Katz*, the Court applied the Second Circuit's directive in *Enron* to hold that "[b]y its literal language, therefore, the Bankruptcy Code precludes the Trustee from bringing any action to recover from any of Madoff's customers any of the monies paid by [BLMIS] to those customers except in the case of actual fraud."  462 B.R. at 452.  That holding is equally applicable here.  Insofar as they relate to transfers more than two years prior to the Filing Date, and thus necessarily must arise under the NY DCL and section 544(b) of the Bankruptcy Code, *all* of the Trustee's avoidance and recovery claims against the Defendants are foreclosed by section 546(e).

As Judge Rakoff subsequently recognized in *Flinn*, the application of section 546(e) in a SIPA proceeding such as this one necessarily requires significant *interpretation* of the

federal securities laws, including SIPA, and thus its application requires withdrawal of the reference.  Specifically:

> Whether § 546(e) applies depends on how a Court resolves numerous questions of securities law.  For example, the Second Circuit has held not only that § 546(e) applies where a transfer completes a securities transaction, but also that completion of such a transaction need not involve a "purchase or sale" of securities.  Thus, to determine whether § 546(e) applies to these cases, a court must determine, among other things, whether transfers from Madoff Securities completed securities transactions even though Madoff Securities never purchased or sold securities on these defendants' behalves.  The Bankruptcy Code provides little guidance on such a question, and a court must undertake "significant interpretation" of securities law in order to resolve it. … Accordingly, as in Katz, the Court withdraws the reference to the bankruptcy court of the question of § 546(e)'s application.

*Flinn* at *4.  The Court reached the same conclusion recently in *Picard v. Avellino*, 11 Civ. 3882 (JSR), et al., Slip Op. at 4-5 (S.D.N.Y. Mar. 11, 2012), withdrawing the reference in that case "for substantially the reasons stated in" *Flinn*.  That analysis applies equally here, leading inexorably to the conclusion that withdrawal of the reference is mandatory.  *See also* March 14, 2012 Order, *Picard v. Maxam Absolute Return Fund, L.P.*, No. 11 Civ. 7428 (JSR); Sept. 16, 2011 Order, *Picard v. Greiff*, No. 11 Civ. 3775 (JSR).

Judge Rakoff's analysis is further confirmed by the arguments that the Trustee has made, and continues to make, in related proceedings to the effect that section 546(e) cannot be applied because it conflicts with SIPA.  *See, e.g.*, Trustee's Mem. of Law in Opp'n to Mot. to Dismiss in *Picard v. Merkin*, Avd. Pro. No. 09-1182 (BRL), at 35 (Bankr. S.D.N.Y. Feb. 24, 2010) (ECF No. 63) ("Were the safe harbor interpreted to apply in this case, the loophole created would eliminate the majority of the avoidance powers granted to the Trustee under SIPA and negate the remedial purpose of SIPA's … provision for avoiding preferential and constructively fraudulent transfers.").  Although implicitly rejected by Judge Rakoff's holdings in *Katz, Flinn* and *Avellino*, the Trustee's argument was previously accepted by the Bankruptcy Court which, in

8

rendering that decision, necessarily undertook the sort of interpretation of SIPA that, under 28 U.S.C. § 157(d), has been reserved for Article III courts.  *Picard v. Merkin (In re Bernard L. Madoff Inv. Sec. LLC)*, 440 B.R. 243, 267 (Bankr. S.D.N.Y. 2010) ("[T]he Fund Defendants' application of section 546(e) to the Initial Transfers must be rejected as contrary to the purpose of the safe harbor provision and incompatible with SIPA.").  While the Defendants are confident that Judge Rakoff's holdings in *Katz*, *Flinn* and *Avellino* are correct, the Trustee's own arguments themselves and the Bankruptcy Court's holding in *Merkin* confirm that in the context of this case, the application of section 546(e) will require the interpretation and construction of the SIPA statute in conjunction with section 546(e).  *Picard v. Avellino*, Slip Op. at 5-6 n.1 ("[T]he question before the Court is not whether § 546(e) applies, but whether resolving that issue will require substantial and material consideration of non-bankruptcy law, which plainly it does.").

Accordingly, as it did in *Katz*, *Flinn* and *Avellino*, the Court should withdraw the Bankruptcy Reference with respect to the Trustee's claims against the Defendants here.

**B.      The Trustee's Claims Require That He Show That Defendants Were "Willfully Blind" To Madoff's Fraud In Order To Establish That They Acted Without "Good Faith," Requiring Significant Interpretation And Application Of A Standard Derived From Federal Securities Law**

Independently, the Court should withdraw the bankruptcy reference to consider the applicability of the "willful blindness" standard of good faith with respect to the Trustee's claims under sections 548(a)(1) and 544(b) of the Bankruptcy Code.  As Judge Rakoff has repeatedly held in this liquidation, "to establish a lack of 'good faith' on the part of securities customers under § 548(c) in the context of a SIPA bankruptcy, the trustee must show that the customer either actually knew of the broker's fraud or 'willfully blinded' himself to it." *Avellino*, Slip Op. at 4; *see also Katz*, 546 B.R. at 455.  Thus, where a trustee is unable to make

HF 7296176v.1 #14035/0004

that showing, section 548(c) precludes him or her from avoiding or recovering transfers that may otherwise be recoverable under section 548(a)(1) of the Bankruptcy Code.

In the context of avoidance claims under section 548(a)(1), the Court has recognized that this "good faith" standard for the receipt of allegedly fraudulent transfers must, in the context of a SIPA proceeding, be "informed by federal securities law," *Katz*, 462 B.R. at 455, and accordingly that withdrawal of the bankruptcy reference is mandatory. *See* Hr'g Tr. at 33:9-20, *Picard v. Katz*, No. 11 Civ. 3605 (JSR) (S.D.N.Y. July 1, 2011) ("Here, the movants have made, in the Court's view, a more than plausible argument that the duty of inquiry of their clients in a securities context is governed by securities law and cannot be overridden after the fact by the bankruptcy law or by the interpretation of a non-bankruptcy law, SIPA, being asserted by the [T]rustee."); *see also Katz*, 462 B.R. at 455; *Avellino*, Slip Op. at 4.  That reasoning applies equally to the Trustee's section 548(a)(1) claims in this case, and requires that the reference be withdrawn.  *Avellino*, Slip Op. at 4 ("Determining whether the different allegations in *each of the Trustee's complaints* plausibly suggest 'willful blindness' – which has historically been one of the law's most difficult concepts – will continue to require substantial and material consideration of the securities laws.") (emphasis added).

The Trustee's claims in this case would also potentially call upon the Court to consider the unanswered question of what standard of "good faith" applies to the Trustee's claims under section 276 of the NY DCL, were they not already foreclosed by section 546(e) of the Bankruptcy Code.  Like the Bankruptcy Code, New York law also incorporates a provision precluding the Trustee from avoiding otherwise fraudulent conveyances where the transferee acted in good faith.  NY DCL § 278 (providing for recovery of fraudulent conveyances from "any person except a purchaser for fair consideration without knowledge of the fraud at the time

of the purchase."). In bankruptcy proceedings, courts have held that "11 U.S.C. § 548(c) and NYDCL § 278(2) should be construed such that they are identical." *In re Foxmeyer Corp.*, 286 B.R. 546, 572 (Bankr. D. Del. 2002); *see also In re Churchill Mortg. Inv. Corp.*, 256 B.R. 664, 676 (Bankr. S.D.N.Y. 2002) (construing the provisions substantially identically). Defendants have not, however, found any cases that considered the appropriate standard with respect to the good faith provision of the NY DCL in a SIPA proceeding. And applying the "notice" and "reasonably diligent investigation" standard that courts have otherwise applied in ordinary bankruptcies, *see, e.g.*, *Churchill*, 256 B.R. at 676, to the Trustee's claims under the NY DCL in this SIPA proceeding would do nothing more than back-door a standard that the Court has already held *cannot* be applied consistently with SIPA. *See Avellino*, Slip Op. at 4 ("[B]ecause the securities laws do not ordinarily impose any duty on investors to investigate their brokers, *those laws foreclose any interpretation of 'good faith' that creates liability for a negligent failure to so inquire.*") (emphasis added); *Katz*, 462 B.R. at 455 ("Just as fraud, in the context of federal securities law, demands proof of scienter, so too 'good faith' in this context implies a lack of fraudulent intent.").

Therefore, even were the Court to reach the question of what the Trustee must show in order to establish his claims under section 276 of the NY DCL,[2] it should hold that the Trustee may not exercise those avoidance powers without first showing that the Defendants were "willfully blind" to Madoff's fraud for substantially the same reasons that the Court has so held in the context of claims under the Bankruptcy Code. *See, e.g.*, *Katz*, 462 B.R. at 455 ("[I]f simply confronted with suspicious circumstances, [an investor] fails to launch an investigation of his broker's internal practices—and how could he do so anyway?—his lack of due diligence

---

[2]     Of course, this is moot if the Trustee's claims are all doomed on the basis that state law claims under section 544(b) are subject to the section 546(e) "safe harbors."

cannot be equated with a lack of good faith, at least so far as section 548(c) is concerned as applied in the context of a SIPA trusteeship.").  At this stage, however, it is sufficiently evident both that this question has *not* yet been addressed and that it *must* be addressed in order for the Trustee to prevail on the claims that he has asserted.  Withdrawal of the bankruptcy reference to consider the issue is therefore mandated under 28 U.S.C. § 157(d).  *See, e.g.*, *Bear, Stearns Sec. Corp. v. Gredd*, No. 01-CV-4379 (NRB), 2001 WL 840187, at *3 (S.D.N.Y. July 25, 2001) (the court "need not resolve the merits of these conflicting positions for purposes of this [withdrawal] motion.  Instead, the question . . . is whether resolution of this matter will require substantial and material consideration of federal law outside of the Bankruptcy Code."); *see also J.P. Morgan*, 454 B.R. at 312 (same); *see also Chemtura Corp. v. United States*, 2010 WL 1379752, at *1 (S.D.N.Y. Mar. 26, 2010) ("Where matters of first impression are concerned, the burden of establishing a right to mandatory withdrawal is more easily met.").

      **C.**    **Determining Whether the Customer Claims May Be Disallowed Under Section 502(d) In the Context of a SIPA Case Requires Significant Interpretation of Federal Non-Bankruptcy Law**

The Trustee also asserts claims against Beacon and Andover for disallowance under section 502(d), which permits a court in bankruptcy to "disallow any claim of any entity from which property is recoverable … or that is a transferee of a transfer avoidable under" various sections of the Bankruptcy Code "unless such entity or transferee has paid the amount, or turned over any such property…." 11 U.S.C. § 502(d).  Under SIPA, however, bankruptcy provisions such as section 502(d) apply in a liquidation of a broker-dealer only "[t]o the extent consistent with the provisions of" SIPA.  15 U.S.C. § 78fff(b).  As Judge Rakoff recognized in *Katz*, as applied to customer claims, section 502(d) is directly in conflict with provisions of SIPA governing the rights of brokerage customers to the distribution of their pro-rata share of "customer property" based on their "net equity."  15 U.S.C. § 78fff-2(b).  The right to such

12

distribution is a substantive right created by non-title 11 federal law, and applies regardless of

whether the customer has received a transfer that the Trustee asserts is avoidable:

> As to disallowance, here again there is a conflict between the policies of the bankruptcy laws in general and of securities laws, in this case expressed through SIPA.  Thus, while section 502(d) of the Bankruptcy Code would support disallowance of the claims made against a bankruptcy estate by a party who received transfers that were void or avoidable, this section is overridden in the context of a SIPA trusteeship by Section 78fff-2 of SIPA, which provides that securities customers who have received avoidable transfers may still seek to pursue those transfers as creditors of the SIPA estate.

> *Katz*, 462 B.R. at 456.  Accordingly, the Trustee's disallowance claim requires

that the Court construe and apply SIPA's customer distribution provisions, including reconciling

them with the Bankruptcy Code.  The Court's conclusion in *Katz* leaves no doubt that the

reference to the Bankruptcy Court must be withdrawn with respect to any judicial determination

of whether the Customer Claims may be disallowed under section 502(d).

   D.   **Determining Whether the Customer Claims**
        **May Be Equitably Subordinated in a SIPA Case Requires**
        **Significant Interpretation of Federal Non-Bankruptcy Law**

        The *Katz* decision likewise makes clear that equitable subordination claims in the

context of a SIPA proceeding require a court to go beyond interpretation of section 510(c) of the

Bankruptcy Code, because federal securities laws (including SIPA) affect the standard of "good

faith" in equitable subordination claims.  Thus, in *Katz*, the Court recognized that the Trustee is

required to show, at a minimum, that a customer acted with "willful blindness" to Madoff's fraud

in order to equitably subordinate its SIPA claim.  *Katz* 462 B.R. at 456 ("The Trustee can

subordinate the defendants' own claims against the estate only by making the same showing [of

willful blindness] required under Count 1 [avoidance of two-year transfers of return on principal

as actual fraudulent transfers].").  Accordingly, just as interpretation of the "willful blindness"

standard in the context of the Trustee's avoidance claims requires withdrawal, so too is

HF 7296176v.1 #14035/0004

withdrawal mandatory with respect to application of the same standard in the context of the Trustee's equitable subordination claims against Beacon and Andover.[3]

## II.    EVEN WERE WITHDRAWAL NOT MANDATORY, IT WOULD BE WARRANTED HERE IN THE EXERCISE OF DISCRETION TO FACILITATE THE EFFICIENT RESOLUTION OF THIS CASE

While the Court's decisions in *Katz*, *Flinn* and *Avellino* effectively foreclose any argument against mandatory withdrawal of the bankruptcy reference in this case, withdrawal is independently appropriate because these claims – to the extent they are not dismissed – can be most efficiently adjudicated in the District Court.  While bankruptcy cases in this district are referred as a matter of course to the bankruptcy court pursuant to Judge Preska's January 31, 2012 Standing Order (and its 1984 predecessor), it is "[t]he *district courts* [that] have original jurisdiction over all civil proceedings 'arising under title 11, or arising in or related to cases under title 11.'"  *In re The VWE Group*, 359 B.R. 441, 445-46 (S.D.N.Y. 2007) (emphasis added) (quoting 28 U.S.C. § 1334(b)).  "The Second Circuit has identified a number of factors courts should consider when determining whether withdrawal 'for cause' exists under § 157(d), including (1) whether the claim is core or non-core; (2) whether the claim is legal or equitable; (3) whether the claim is triable by a jury; (4) the most efficient use of judicial resources; (5) reduction of forum shopping; (6) conservation of estate and non-debtor resources; and (7) uniformity of bankruptcy administration."  *In re Enron Power Marketing, Inc.*, No. 01 Civ. 7964, 2003 WL 68036, at *6 (S.D.N.Y. 2003) (citing *Orion Pictures Corp. v. Showtime Networks*, 4 F.3d 1095, 1101 (2d Cir. 1993)).  "The Second Circuit has emphasized that the principal question underlying the *Orion*

---

[3]    Notwithstanding the District Court's holding in *Katz* that the Trustee must demonstrate willful blindness in order to equitably subordinate a claim in the context of a SIPA proceeding, the Defendants reserve their right to argue that the applicable standard for equitable subordination of non-insider, non-fiduciary claims requires the Trustee to demonstrate "gross and egregious conduct."  *See In re First Alliance Mortgage Co.*, 298 B.R. 652, 667 (C.D. Cal. 2003).

HF 7296176v.1 #14035/0004

factors is efficient and consistent administration of the laws." *In re Enron Corp.*, No. 04 Civ. 509 (MBM), 2004 WL 2149124, at *3 (S.D.N.Y. Sept. 23, 2004).

Considered together, those factors weigh heavily in favor of permissively withdrawing the bankruptcy reference now because, among other reasons, the Trustee's claims are triable to a jury, only an Article III court can enter any final judgment on them and the District Court is already familiar with and has written extensively on the issues presented by the Trustee's claims in this case within the context of this liqduiation.  As discussed in more detail below, moreover, to the extent necessary, pre-trial proceedings would be most efficiently supervised in the District Court by the Magistrate Judge who has already been supervising discovery in highly-related proceedings for more than a year.

### A.  Most Of The Defendants Are Entitled To Jury Trials On The Trustee's Claims, Which Cannot Be Conducted In Bankruptcy Court

As a preliminary matter, there can be little question that, if this case ultimately proceeds to trial, that trial must be conducted in the District Court and judgment must be entered by an Article III judge.  Accordingly, the only question is where *pre-trial proceedings* on the Trustee's claims will be conducted.

It is well settled that a defendant who has not filed a proof of claim in bankruptcy, and who is sued by a bankruptcy trustee for recovery of allegedly preferential or fraudulent conveyances, has a Seventh Amendment right to present its case to a jury.  *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 58-59 (1989) (holding that defendant in preference action had right to jury trial); *Langenkamp v. Culp*, 498 U.S. 42, 45 (1990) ("If a party does *not* submit a claim against the bankruptcy estate, however, the trustee can recover allegedly preferential transfers only by filing what amounts to a legal action to recover a monetary transfer.  In those circumstances the preference defendant is entitled to a jury trial."); *In re Hooker Investments,*

*Inc.*, 937 F.2d 833, 838 (2d Cir. 1991) ("[W]hen no claim against the estate is filed, an action to recover a monetary preference is essentially a legal one, and the seventh amendment requires that the defendant be afforded a jury trial.").  With the exception of Beacon and Andover, none of the Defendants filed SIPA claims, and accordingly they are entitled to have their claims for avoidance of fraudulent transfers tried before a jury.  However, only an Article III judge may preside over a federal jury trial, absent consent by the parties to proceed before the Bankruptcy Court.  28 U.S.C. § 157(e), *McCord v. Papantoniou*, 316 B.R. 113, 125 (E.D.N.Y. 2004) ("[D]efendant's consent to a jury trial in the bankruptcy court is required.").  The Defendants will not consent to a jury trial in the Bankruptcy Court and, accordingly, are entitled to have the claims against them tried in the District Court; the only remaining question is whether the bankruptcy reference is withdrawn now or just before trial.[4]

### B.  The Bankruptcy Court Lacks Constitutional Authority To Enter A Final Judgment Against Defendants Who Have Not Filed SIPA Claims

Whether tried before a jury or not, the Trustee's claims  invoke the judicial power of the United States and, accordingly, must proceed before an Article III judge.  "When a suit is made of 'the stuff of the traditional actions at common law tried by the courts at Westminster in 1789 … and is brought within the bounds of federal jurisdiction, the responsibility for deciding that suits rests with Article III judges in Article III courts.'"  *Stern v. Marshall*, 131 S. Ct. 2594, 2609 (2011); *see also Murray's Lessee v. Hoboken Land & Improvement Co.*, 18 How. 272, 284 (1856) ("To avoid misconstruction upon so gave a subject, we think it proper to state that we do not consider congress can … withdraw from judicial cognizance any matter which, from its

---

[4]      Defendants' entitlement to a jury trial, standing alone, has been recognized by numerous courts in this district as sufficient basis for withdrawing the bankruptcy reference.  *See, e.g., In re 131 Liquidating Corp.*, 222 B.R. 209, 211 (S.D.N.Y. 1998) ("[T]he district court may find that the inability of the bankruptcy court to hold the trial itself constitutes cause to withdrawal the reference."); *In re CIS Corp.*, 172 B.R. 748, 755 (S.D.N.Y. 1994) ("The fact that an adversary proceeding concerns non-core matters for which the right to jury trial is available is sufficient cause of discretionary withdrawal of reference.").

nature, is the subject of a suit at the common law, or in equity, or admiralty.").  An action to recover money alleged to have been fraudulently transferred is precisely the type of action that had to be brought in a court of law in 1789, and which is required to be adjudicated before an Article III judge today.  *Granfinanciera*, 492 U.S. at 46-47 ("[R]espondent would have had to bring his action to recover an alleged fraudulent conveyance of a determinate sum of money at law in 18th-century England, and that a court of equity would not have adjudicated it."); *Schoenthal v. Irving Trust Co.*, 287 U.S. 92, 94 (1932) ("In England, long prior to the enactment of our first Judicial Act, common-law actions of trover and money had and received were resorted to for the recovery of preferential payments by bankrupts.").  Permitting the bankruptcy court to enter a final judgment on the Trustee's claims would violate Article III of the Constitution by "impermissibly remov[ing] … 'the essential attributes of the judicial power' from the Art. III district court, and … vest[ing] those attributes in a non-Art. III adjunct." *Northern Pipeline Const. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 87 (1982).  Thus, again, given that the ultimate destination of these claims is the District Court, the only question is the length of the journey.

> **C.     Withdrawing The Bankruptcy Reference Now**
> **Would Facilitate Coordination Of This Litigation With**
> **<u>Highly-Related Claims Already Pending In The District Court</u>**

Finally, while in ordinary circumstances "[t]he bankruptcy judge may still adjudicate pre-trial matters not requiring the 'final order or judgment' reserved to the district court" *In re CIS Corp.*, 172 B.R. 748, 764 (S.D.N.Y. 1994), in effect acting as a magistrate, *see In re Adelphia Institute, Inc.*, 112 B.R. 534, 539 (S.D.N.Y. 1990), that would be extremely inefficient here.

17

For nearly a year and a half, the Honorable Andrew J. Peck has presided over discovery in five civil actions pending before Judges McMahon and Sand[5] against many of the Defendants arising from the same nucleus of operative fact as the Trustee's claims here.  The crux of the allegations in those actions is that certain of the Defendants in this case fraudulently concealed material information that they allegedly knew about Madoff from their clients and investors in order to induce them to invest with Madoff.  Judge Peck is intimately familiar with the facts of these cases, and would have no difficulty supervising discovery with respect to the Trustee's claims if the reference is withdrawn and pre-trial proceedings are referred to Judge Peck.  Indeed, Judge Peck, who is aware of this action, has expressed his desire that the Trustee be involved in discovery in the cases that are before him.  (See, e.g., May 17, 2011 Hr'g Tr. at 50:2-5 ("THE COURT:   "Let's get Mr. Picard involved, if he's willing, since I don't have authority over him.  And if he is, I am sure the other issues will get resolved with or without judicial intervention.").)  By contrast, to date there have been *no* proceedings of any kind before Judge Lifland in the Bankruptcy Court with respect to these claims or facts, and Judge Lifland presumably has not spent significant time acquainting himself with the facts and claims in this case.

Pursuant to a February 15, 2012 stipulation between the Defendants and the Trustee, the parties agreed that any motion such as this by the Defendants may include the following language verbatim:

> Pursuant to the Parties' agreement designed to promote efficiency, avoid duplication and preserve resources, and per the suggestion to the

---

[5]     *In re J.P. Jeanneret Associates, Inc. Litigation*, No. 09 Civ. 3907 (S.D.N.Y.) is currently pending before the Honorable Colleen McMahon.  *In re Beacon Assocs. Litig.*, No. 09 CV 0777 (S.D.N.Y.), *Solis v. Beacon Assocs. Mgmt. Corp.*, No. 10 Civ. 8000 (S.D.N.Y.), *Buffalo Laborers v. J.P. Jeanneret Associates, Inc.*, No. 09 CV 8362 (S.D.N.Y.) and *Hartman v. Ivy Asset Management LLC*, No. 09 Civ. 8278 (S.D.N.Y.) are currently pending before the Honorable Leonard B. Sand.

Stipulating Defendants by Magistrate Judge Peck, the Trustee has participated in coordinated deposition discovery of witnesses noticed in several consolidated actions proceeding in the United States District Court for the Southern District of New York involving the Stipulating Defendants.  The Parties have expressly agreed that their participation in these depositions shall be without prejudice to any Party's position with regard to a Motion to Withdraw by any Stipulating Defendants, and the Court should disregard their participation in such coordinated discovery in connection with a Motion to Withdraw.  The Parties have further agreed, to delay certain specific types of motions and discovery in the *Picard v. Beacon et al.* bankruptcy matter (Adv. Pro. No. 10-05356 (BRL)) for an Agreed Period from February 25, 2012 through April 1, 2012 without prejudice to any Party's position with regard to a Motion to Withdraw by any Stipulating Defendant, and the Court should disregard the passage of time in connection with a Motion to Withdraw as the Trustee has waived any timeliness objection to a Motion to Withdraw.[6]

Accordingly, to the extent that the claims in this case are not resolved through dispositive motions filed with the District Court, Defendants submit that the *Orion* factors, including "the most efficient use of judicial resources," "conservation of estate and non-debtor resources," and "uniformity of bankruptcy administration" weigh heavily in favor of referring discovery to Magistrate Judge Peck for coordination with the pending proceedings already before him.  Coupled with the Bankruptcy Court's constitutional inability to enter a final judgment and the Defendants' rights to a jury trial, it is plain that these cases will be more efficiently and effectively litigated to a prompt resolution if the bankruptcy reference is withdrawn even if withdrawal is not mandatory.

---

[6]     Notwithstanding this agreed language, in fact, due to an extension of the discovery schedule in the coordinated actions, deposition discovery has not yet begun.  It is scheduled to commence on April 30, 2012.

## CONCLUSION

For all the reasons set forth herein, the Adversary Proceeding is subject to mandatory withdrawal of the reference, is appropriate for discretionary withdrawal even if not mandatory, and the Defendants respectfully request that the Court grant the Withdrawal Motion in its entirety.

Dated: New York, New York
      March 26, 2012

HERRICK, FEINSTEIN LLP

    /s/ Arthur G. Jakoby

Arthur G. Jakoby
Frederick E. Schmidt, Jr.
2 Park Avenue
New York, NY  10016
ajakoby@herrick.com
eschmidt@herrick.com
Tel. (212) 592-1400
Fax  (212) 592-1500

*Attorneys for Beacon Associates LLC I, Beacon Associates LLC II, Beacon Associates LLC, Andover Associates, L.P., Andover Associates LLC I, Andover Associates (QP) LLC, and Andover Associates LLC II*

CLEARY GOTTLIEB STEEN & HAMILTON LLP

    /s/ Lewis J. Liman

Lewis J. Liman
Jeffrey A. Rosenthal
Members of the Firm
One Liberty Plaza
New York, NY  10006
lliman@cgsh.com
jrosenthal@cgsh.com
Tel. (212) 225-2000
Fax  (212) 225-3999

*Attorneys for Ivy Asset Management LLC, Lawrence Simon, Howard Wohl, Ivy Birchwood Associates LP, Ivy Enhanced Income Fund, Ivy Regency Fund, LP, Ivy Rosewood Offshore Fund, Ltd., Birchwood Associates Management LLC, Ivy International LLC, and Regency Asset Management LLC*

HISCOCK & BARCLAY, LLP

    /s/ Brian Whiteley

Brian Whiteley
Carolyn Marcotte
One International Place, 26th Floor
Boston, MA  02110
bwhiteley@hblaw.com
cmarcotte@hblaw.com
Tel. (617) 274-2900
Fax  (617) 722-6003

*Attorneys for J.P. Jeanneret Associates, Inc., John Jeanneret and Paul Perry*

ROSENFELD & KAPLAN, LLP

    /s/ Tab K. Rosenfeld

Tab K. Rosenfeld
Steven Kaplan
535 Fifth Avenue, Suite 1006
New York, NY  10017
tab@rosenfeldlaw.com
steve@rosenfeldlaw.com
Tel. (212) 682-1400
Fax  (212) 682-1100

*Attorneys for Beacon Associates Management Corporation, Andover Associates Management Corporation, Joel Danzinger and Harris Markhoff*

HF 7296176v.1 #14035/0004